# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1600

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United |
| | * | States District Court for |
| v. | * | the District of Minnesota. |
| | * | |
| Kamil Madfoun Al-Esawi, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 11, 2008
Filed: March 31, 2009

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

On appeal, after his trial to the court, Kamil Madfoun Al-Esawi challenges the sufficiency of the evidence offered in support of his conviction for making a materially false statement to federal agents on January 20, 2006. He further challenges the district court's[1] denial of his severance motion regarding count one and count three. We affirm.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

## I. BACKGROUND

In 2005 and 2006, special agents from the IRS and FBI investigated numerous members of the Wazwaz family in the Minneapolis area for engaging in a conspiracy to impair and impede the lawful functioning of the IRS and to evade the payment of approximately $5 million in Minnesota sales taxes. The Wazwaz targets owned numerous retail tobacco stores in the Twin Cities area and operated them in a manner the government believed was designed to conceal the income they generated. One way that some of the targets accomplished this was to install nominal owners in the tobacco stores to conceal who really owned and benefitted from the stores. Tawfiq Wazwaz was one target of the investigation. Tawfiq, at one time prior to 2005, was the nominal owner of Maplewood Tobacco. In 2005, however, Musaab Wazwaz became the nominal owner of Maplewood Tobacco. Al-Esawi was the sole employee of Maplewood Tobacco, and was thus questioned by the FBI during the course of the Wazwaz investigation.

In the course of their investigation, the special agents focused on the dealings of Maplewood Tobacco, obtaining documents including delivery receipts, invoices, issued tobacco licenses, bank records, and other corporate records from the store, as well as personal bank and debt records of Tawfiq. Despite the fact that all external documents would lead an insider to conclude that Musaab owned Maplewood Tobacco in 2005, the agents' investigation, including some actual surveillance, led them to believe that Tawfiq was the beneficial owner of the store. Three or four days of surveillance showed that only Tawfiq and Al-Esawi conducted the business at Maplewood Tobacco. Similar surveillance showed Musaab working at Royal Tobacco in Brooklyn Park.

To reconcile the tension between the "paper" owner of Maplewood Tobacco and the apparent beneficiary of that ownership, special agents interviewed Al-Esawi for two hours while he worked at the store January 20, 2006. At all times during that

interview, Al-Esawi insisted that Musaab owned and controlled Maplewood Tobacco. When pressed on his statements that Musaab and not Tawfiq worked at Maplewood Tobacco, Al-Esawi repeatedly stated that Musaab was involved in the store and that indeed, the agents must have witnessed Musaab and not Tawfiq during their surveillance. The agents followed up this January 20, 2006, interview with a request to search the store, which they ultimately did with Musaab's consent. It is primarily from this search that the agents obtained the bulk of the documents used at trial. Most of the paperwork pertained to the business of Maplewood Tobacco (mainly signed for by Tawfiq) and Tawfiq's or Al-Esawi's personal affairs. The district court convicted Al-Esawi on count one, which charged that on January 20, 2006, Al-Esawi falsely told two federal agents that Maplewood Tobacco was owned and controlled by Musaab, even though he knew that Tawfiq beneficially owned and controlled Maplewood Tobacco. The court sentenced Al-Esawi to two years' probation and a $500 fine on count one.

The charge in count three, on which the district court acquitted Al-Esawi, stemmed from a meeting between Al-Esawi and government agents on February 15, 2006. On that date, Al-Esawi came to the U.S. Attorney's Office for a proffer session. Al-Esawi stated at the proffer that Antar Wazwaz, the husband of a prior nominal owner of Maplewood Tobacco, hired him to work at the store. Antar denied hiring Al-Esawi. Count three of the superseding indictment against Al-Esawi charged Al-Esawi with making a false statement at the proffer regarding who hired him to work at Maplewood Tobacco.

## II.    DISCUSSION

On appeal, Al-Esawi claims that the government's evidence at trial failed to establish that Tawfiq beneficially owned and controlled Maplewood Tobacco in January 2006 or that Al-Esawi knew Tawfiq beneficially owned and controlled the tobacco store. To the contrary, Al-Esawi claims, the evidence strongly suggested that

Al-Esawi reasonably believed that Musaab owned Maplewood Tobacco. He further claims that the district court should have severed the counts against him because his February 15, 2006, statements were immunized and could not be used against him on count one.

### A.    Count One

The government's burden at trial was to prove that Al-Esawi made a false statement, which requires proof that the statement was untrue when made and that Al-Esawi knew the statement was untrue. United States v. Hartness, 845 F.2d 158, 160-62 (8th Cir. 1988). The district court's finding must be sustained if supported by the evidence. United States v. Erhart, 415 F.3d 965, 969 (8th Cir. 2005).

The evidence clearly supports the judgment in this case. On January 20, 2006, for example, Al-Esawi told the agents that Tawfiq had nothing to do with Maplewood Tobacco. However, surveillance puts Tawfiq squarely in the store working side-by-side with Al-Esawi. A search of the store also revealed a large volume of documents pertaining to the store that bore Tawfiq's name. Moreover, the evidence indicated Tawfiq benefitted financially from the operation of the store during 2005, at which time Musaab nominally owned the store. Specifically, Al-Esawi signed several checks from the store to pay for Tawfiq's SUV payment and for repairs on that SUV–both indicating that Tawfiq, indeed, benefitted from Maplewood Tobacco and that Al-Esawi knew that. And, when asked by the government agents to seek approval for a search of the Maplewood store, Al-Esawi did not have a working number for Musaab, his alleged boss, but Tawfiq's phone number was taped to the register. Even three out of the four bank employees from the nearby bank where Maplewood Tobacco did business–when shown a series of three photo lineups, each one separately containing a photo of Kamil Al-Esawi, Tawfiq Wazwaz and Musaab Wazwaz–clearly recognized Tawfiq or Al-Esawi. None of the employees, however, found Musaab familiar in any way as someone who did business at the bank. Al-Esawi claims that

the evidence regarding Tawfiq proves his presence but not his beneficial ownership. We disagree. Given our standard of review, this argument is wholly unpersuasive. There is evidence to support the judgment on count one.

### B.     Pre-Trial Motion to Sever

Prior to trial, Al-Esawi filed a motion to sever counts one and three, fearing that the government would attempt to prove the falsity of his statements made on January 20, 2006 (the basis of count one), by offering his statements made during the proffer interview on February 15, 2006 (the basis of count three). The district court denied this motion. The district court agreed with the magistrate judge's report and recommendation concluding that the immunized statements regarding who hired Al-Esawi were not probative of the falsity of his January 20, 2006, statement regarding the ownership of Maplewood. The district court further agreed with the magistrate judge that any potential prejudice could be cured by an appropriate limiting instruction to the jury–this was especially poignant because at the time the district court adopted the magistrate judge's report, the parties had agreed to a bench trial and the court was confident that it could compartmentalize the admissible evidence regarding each count.

Rule 14 of the Federal Rules of Criminal Procedure provides that the district court may order separate trials of counts or grant a severance if it appears that a defendant or the government is prejudiced by a joinder of offenses. We will reverse a denial of a motion to sever if the appellant demonstrates an abuse of discretion resulting in clear prejudice. United States v. Flores, 362 F.3d 1030, 1039 (8th Cir. 2004). Only in an unusual case will the prejudice resulting from a joint trial be substantial enough to outweigh the general efficiency of joinder. United States v. Kirk, 528 F.3d 1102, 1107 (8th Cir. 2008). Even if two counts are improperly joined we will reverse a court's denial of a motion to sever only if the misjoinder results in actual prejudice, i.e., the misjoinder has a substantial and injurious effect or influence

on the verdict. United States v. Turner, 500 F.3d 685, 688 (8th Cir. 2007). In this case, for the reasons explained below we find no actual prejudice nor any abuse of discretion.

As an initial matter, we note that the parties disagree about the use of the February 15, 2006, statements to convict Al-Esawi on count one. Al-Esawi argues that the government granted him statutory immunity under 18 U.S.C. § 6002, which states that the government may grant a witness immunity so long as the testimony is not thereafter used against the witness "in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." 18 U.S.C. § 6002; see also United States v. DeSalvo, 26 F.3d 1216, 1222 (2d Cir. 1994) (reiterating that the Fifth Amendment prohibits the use of immunized testimony in a prosecution for any offense–including perjury–committed before the grant of immunity if the witness would have had a valid claim of privilege absent the grant); Kastigar v. United States, 406 U.S. 441, 453 (1972). Further, Al-Esawi claims the government violated the federal immunity statute and the Fifth Amendment when it offered the testimony of Agent Kinney during its case-in-chief regarding statements Al-Esawi made during the February 15, 2006, proffer interview to prove that his January 20, 2006, statements were false. While the substance of Al-Esawi's argument has merit, the context is misplaced. In this case, the government did not grant Al-Esawi statutory immunity under section 6002, but rather through a proffer letter, containing specific terms, signed by the Assistant U.S. Attorney. A portion of that proffer stated:

2.  The purpose of the proffer is to receive information from you concerning criminal activities that have occurred in the District of Minnesota. In light of the purpose of the meeting, the parties understand and agree that in any case prosecuted by the United States Attorney's Office for the District of Minnesota, the government will not offer in its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining the

applicable guideline range, any oral statements made by you at the meeting, except in a prosecution for false statements, obstruction of justice, or perjury;

3.  Notwithstanding paragraph 2 above, the government may use the following:

. . .

(b)  statements made by you during the proffer and all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should you testify, or to rebut any evidence offered by or on behalf of you in connection with a trial and/or sentencing.

The issue, then, is whether the government violated the terms of its February 15, 2006, promise by using statements from the proffer interview at trial, resulting in clear prejudice to Al-Esawi. In reply, Al-Esawi concedes that statutory immunity is not involved but continues to assert that the government violated the terms of the proffer and that in doing so, violated the Fifth Amendment.

At trial, Agent Kinney testified during the government's case-in-chief that during his proffer interview, Al-Esawi unequivocally stated that Antar Wazwaz hired him to work at Maplewood Tobacco in 2003. Agent Kinney further testified that Al-Esawi stated during the proffer that Tawfiq started showing up at the Maplewood store five or six months after Al-Esawi started working there and that Antar and Tawfiq spent equal time at the store, with equal access to the back office, during that time. This testimony, arguably, is relevant to the charge in count three. However, Agent Kinney further testified about statements Al-Esawi made during the proffer interview that contradicted statements Al-Esawi made earlier during the January 20, 2006, store interview–specifically, that Al-Esawi told the agents during the February interview that Tawfiq worked at Maplewood Tobacco, that Tawfiq spent more time at the store than Musaab, that Al-Esawi hardly saw Musaab at the store at all, and that Al-Esawi

-7-

never saw Musaab drive the SUV . The government also utilized Agent Kinney's testimony to point out that Al-Esawi was inconsistent during the proffer interview itself regarding Musaab's presence at the Maplewood store. At the beginning of the proffer interview, Al-Esawi stated that Musaab was present at the Maplewood store more than himself but at the end of the interview, Al-Esawi stated he hardly ever saw Musaab at the store at all. On cross-examination during the government's case-in-chief, Agent Kinney testified that these February 15, 2006, statements were material to the issue of ownership of the Maplewood store, the focus of count one. The government reiterated the materiality of these February 15, 2006, statements as they pertained to count one in its closing argument, stating:

> Historical truth does not change. Mr. Al-Esawi's truth has changed a lot. At the beginning of the interview at the store he said Musaab Wazwaz was the only other person who worked at the store. At the end of the proffer he said that Tawfiq Wazwaz worked in the store more than anybody else and Musaab Wazwaz was hardly there at all, statements made in the face of his knowledge that the Government had done these surveillances.

On appeal, the government erroneously argues that because the proffer letter allowed the government to use Al-Esawi's February 15, 2006, proffer statements for purposes of cross-examination and to rebut evidence offered by Al-Esawi at any trial, and because Al-Esawi testified at trial and fundamentally contradicted what he said at the proffer, the government was free to offer Agent Kinney's testimony. This argument puts the cart before the horse so-to-speak. First, Agent Kinney testified about Al-Esawi's proffer statements during the government's case-in-chief. At that time, Al-Esawi had not yet testified. The government could not possibly know in advance that Al-Esawi was going to "fundamentally contradict" what he said during the February 15, 2006, proffer interview. At this point in the trial, the government over-extended the use of the proffer interview statements when it used them to prove

the falsity of Al-Esawi's prior statements, made at the January 20, 2006, store interview.

Nonetheless, we conclude the district court did not abuse its discretion in denying Al-Esawi's motion to sever prior to trial.  We find no clear prejudice arising from any government misuse of the immunized statements.  The district court acquitted Al-Esawi on count three.  And, the statements made during the February 15, 2006, proffer interview were in no way critical to the district court's judgment on count one.  There was sufficient, independent evidence to support the district court's finding of guilt on count one and we are confident the district court successfully compartmentalized the admissible evidence on each count. See United States v. Boyd, 180 F.3d 967, 982 (8th Cir. 1999) (suggesting that a bench trial "decreases the potential for the trier of fact to lose its way amidst the varied evidence necessary to prove" multiple charges).

## III.  CONCLUSION

For the reasons stated herein, we affirm.

_____