# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3418

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Levi Akai Livingstone, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 9, 2009
Filed: August 18, 2009

_____

Before MURPHY, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

A jury convicted Levi Livingstone of one count of conspiring to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846, as well as three counts of distributing methamphetamine, *see* 21 U.S.C. 841(a)(1). The district court[1] then sentenced Mr. Livingstone to 216 months in prison. He appeals his conviction on the conspiracy count, asserting that the district court erred by denying his motions for a bill of

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

particulars and by failing to order the government to disclose information obtained during pretrial interviews of various co-conspirators who testified at trial. We affirm.

## I.

If a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars. *See* Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is to inform the defendant of the nature of a charge with "sufficient precision to enable him to prepare for trial" and "to avoid or minimize the danger of surprise at trial." *United States v. Hernandez*, 299 F.3d 984, 989-90 (8th Cir. 2002), *cert. denied*, 537 U.S. 1134 (2003). To establish reversible error based on a denial of his motion, Mr. Livingstone "must show that he was actually surprised at trial and suffered prejudice from the denial." *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993).

The government filed a number of indictments against Mr. Livingstone. The second superseding indictment was the final charging document and it contained the conspiracy charge at issue: It stated that for a period of about three years, Mr. Livingstone "did unlawfully, knowingly and intentionally conspire with other persons known and unknown to the grand jury to distribute and to possess with intent to distribute 50 grams or more of actual methamphetamine" and 500 grams or more of a mixture containing methamphetamine. Mr. Livingstone argued in support of his motion for a bill of particulars that the government had a duty to disclose the evidence that it intended to use against him at trial. The government's evidence of Mr. Livingstone's involvement consisted principally of the testimony of alleged co-conspirators, and Mr. Livingstone sought the specifics of what this testimony would be.

In its response to the motion, the government explained its theory of the case, noted that it had already provided Mr. Livingstone with considerable discovery, including the names of its witnesses, and stated that it would disclose more

information about the witnesses before trial. The magistrate judge[2] observed that a bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial. *See United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993), *cert. denied*, 513 U.S. 831 (1994). The magistrate judge then denied the motion, concluding that the indictment and the government's disclosures were sufficient to enable Mr. Livingstone "to understand the nature of the charges, prepare a defense, and avoid unfair surprise." On the first day of trial, after the government had provided additional information, the district court denied Mr. Livingstone's motion to overturn the magistrate judge's denial of a bill of particulars.

We review a district court's denial of a motion for a bill of particulars for an abuse of discretion. *See United States v. Sileven*, 985 F.2d 962, 966 (8th Cir. 1993) (per curiam); *see also United States v. Shepard*, 462 F.3d 847, 860 (8th Cir. 2006), *cert. denied*, 549 U.S. 1099 (2006). We discern no abuse of discretion in this record, nor has Mr. Livingstone demonstrated that the denial of his motion prejudiced him. He does not maintain that he missed the chance to pursue a particular defense. His defense strategy was to attack the credibility of the government's witnesses, but he does not indicate how pretrial knowledge of their testimony would have assisted him in doing that. We thus conclude that the district court did not err in denying Mr. Livingstone's motion for a bill of particulars.

## II.

Mr. Livingstone also contends that *Brady v. Maryland*, 373 U.S. 83 (1963), required the government to disclose certain impeachment evidence. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either

---

[2]The Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The disclosure obligation encompasses both substantive exculpatory evidence and evidence that might be valuable in impeaching government witnesses. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). In reviewing a *Brady* claim, we ask whether " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *United States v. E.V.*, 500 F.3d 747, 756 (8th Cir. 2007) (quoting *Bagley*, 473 U.S. at 682).

In its opening statement, the government revealed the drug transactions to which each of Mr. Livingstone's alleged co-conspirators was going to testify during trial. In the two weeks leading up to the trial, the government had interviewed these witnesses but it did not disclose the substance of those interviews to the defendant. After the government's opening statement, Mr. Livingstone asked for the prosecutor's interview notes and "time to deal with them," on the ground that the government should have turned over the information because it was inconsistent with statements that the witnesses had made earlier to the police. Mr. Livingstone does not maintain that the witnesses' trial testimony was inconsistent with the information contained in the government's interview notes. Instead, he merely asserts that the interview notes might have been helpful in preparing for impeaching the witnesses during cross-examination.

At trial, the government acknowledged that with respect to the testimony implicating Mr. Livingstone "many of these witnesses did not provide such detail" before the interviews, and their earlier statements to the police were thus arguably inconsistent with their interviews. Prior inconsistent statements can, of course, be used to undermine the credibility of a witness, *see* Fed. R. Evid. 613, and Mr. Livingstone was unaware of the arguable inconsistency until the government's opening statement. But Mr. Livingstone fails to show that the result of the trial would have been different if he had known beforehand what the witnesses were going to say

at trial, because the record reveals that he did in fact effectively cross-examine the co-conspirators about inconsistencies between what they had said to the police and what they testified to. Thus we see no reasonable probability that the outcome of the trial would have been different if the government had disclosed the interview notes. *See E.V.*, 500 F.3d at 756.

Affirmed.

_____