# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-3441/10-3384

_____

United States of America,         *
                                         *

         Plaintiff - Appellee,   *

                                         *   Appeal from the United States

    v.                           *   District Court for the

                                         *   Eastern District of Missouri.

Darwin Markeith Huggans,     *

also known as Mark Huggans,    *

                                         *

         Defendant - Appellant.   *

_____

Submitted: June 15, 2011
Filed: August 18, 2011

_____

Before BYE and MELLOY, Circuit Judges, and ERICKSEN,[1] District Judge.

_____

MELLOY, Circuit Judge.

Following a bench trial, Darwin Markeith Huggans ("Huggans") was convicted of conspiracy to distribute cocaine and attempt to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). He was sentenced to life imprisonment pursuant to 21 U.S.C. §§ 841(b)(1)(A)(ii)(II) and 851. He appeals both his convictions and his sentence, challenging the sufficiency of the evidence and

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

arguing that the district court[2] erred in: denying his pre-trial motions seeking dismissal of the indictment, a bill of particulars, and severance of the counts; denying his post-trial motion for a new trial; and failing to toll the limitations period for challenging the validity of prior convictions under 21 U.S.C. § 851. For the reasons stated below, we affirm.

I.

On September 13, 2007, a federal grand jury charged Huggans with attempt to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On December 20, 2007, Huggans was charged in a two-count superseding indictment with one count of conspiracy to distribute cocaine ("conspiracy count") and one count of attempt to possess with intent to distribute cocaine ("attempt count"), both in violation of 21 U.S.C. §§ 841(a)(1) and 846. The superseding indictment read:

Count I

The Grand Jury charges that: Beginning in 2000 and continuing up to the date of this Indictment, in the Eastern District of Missouri and elsewhere, DARWIN MARKEITH HUGGANS, a/k/a/ Mark Huggans, the defendant herein, did knowingly and intentionally conspire, combine, confederate and agree with other persons known and unknown to this Grand Jury, to commit offenses against the United States, to wit: to knowingly and intentionally distribute and possess with the intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841 (a)(1).
        All in violation of Title 21, United States Code, Sections 846 and 841(a)(1); and

---

[2]The Honorable Catherine D. Perry, United States District Court for the Eastern District of Missouri.

The quantity of cocaine involved in the offense was in excess of five (5) kilograms, thereby making the offense punishable under Title 21, United States Code, Section 841(b)(1)(A)(ii)(II).

Count II

The Grand Jury further charges that: Beginning in March 2007 and continuing until April 12, 2007, in the Eastern District of Missouri, DARWIN MARKEITH HUGGANS, a/k/a/ Mark Huggans, the defendant herein, did knowingly and intentionally attempt to possess with the intent to distribute cocaine, a Schedule II narcotic controlled substance and took a substantial step in furtherance thereof.
In violation of Title 21, United States Code, Sections 846 and 841(a)(1);
And the quantity of cocaine involved in the offense was more than five (5) kilograms making the offense punishable under Title 21, United States Code, Section 841(b)(1)(A)(ii)(II).

Huggans filed pre-trial motions seeking dismissal of the indictment, a bill of particulars, and severance of the charged offenses. When these motions were denied, he waived his right to a jury trial. Prior to the commencement of the bench trial, the government filed an information seeking a sentencing enhancement pursuant to 21 U.S.C. § 851 based on Huggans's prior Missouri felony drug convictions for second-degree trafficking in 1990 and for possession of cocaine in 1995.

The evidence at trial, briefly summarized in a light supporting the verdict, showed the following. See United States v. Kain, 589 F.3d 945, 948 (8th Cir. 2009) (recognizing that "[w]e review the sufficiency of the evidence after a bench trial in the light most favorable to the verdict"). This case arose out of an investigation by the Drug Enforcement Agency ("DEA") into a drug-distribution conspiracy headed by Luis Sais from a jail in Mexico City, where he was imprisoned. Beginning in 2001, Curtis Rice began shipping stolen cars to Sais's associates in Mexico in exchange for marijuana. In 2005, Rice began transporting cocaine, which was supplied by Sais's

associates, from Mexico by boat into Texas and then in four-by-four trucks to cities across the United States, including St. Louis, Missouri. Beginning in December of 2005, Rice began supplying Sais's cocaine to Anthony Stiles in St. Louis.

Stiles had been dealing drugs with Huggans since 2001, receiving increasing quantities of cocaine from Huggans until Huggans lost his cocaine connection in 2005. After Stiles obtained the Sais connection, Huggans began buying cocaine from Stiles. According to Stiles's estimate, Stiles delivered approximately 600 kilograms of cocaine to Huggans over a six to nine month period.

By March of 2007, the Drug Enforcement Administration ("DEA") had caught up with Rice and Stiles, and they agreed to cooperate. Stiles named Huggans as his primary customer, and DEA agents developed a plan to conduct a narcotics transaction between Rice, Stiles, and Huggans. In conversations recorded by DEA agents, Stiles let Huggans know that Rice had cocaine for sale at $17,000 per kilogram. On April 10, 2007, Rice and Huggans met to discuss Huggans's purchase of twenty kilograms of cocaine. Subsequently, they agreed to meet for the exchange on April 12, 2007. On that day, Huggans met Rice, bringing a backpack full of money. Rice and Huggans traveled in Rice's car to a hotel. They planned to count the money in the hotel, whereupon Rice would call his "guy" to deliver the cocaine. The hotel room in which the meeting occurred was equipped with both audio and video recording devices, which captured the money count. Huggans asked Rice to call his "guy." Instead, Rice called nearby DEA agents. Rice and Huggans left the hotel room with Rice carrying the money. DEA agents arrested Huggans outside the room and seized the money. A count revealed $329,320, which was $10,680 short of the agreed-upon price of $340,000 for the twenty kilograms of cocaine.

At the close of the government's evidence, Huggans moved for a judgment of acquittal, which was denied. On March 13, 2009, the district court found Huggans guilty on both counts. Prior to sentencing, Huggans moved for a new trial based upon

newly discovered evidence, which the district court also denied. On October 7, 2009, the district court sentenced Huggans to life imprisonment pursuant to 21 U.S.C. §§ 841(b)(1)(A)(ii)(II) and 851.

## II.

### A. Motion to dismiss the indictment

Huggans first argues that the district court erred in denying his motion to dismiss the indictment. He contends that the indictment was insufficient to provide him with adequate notice as to the nature of the charges against him and insufficient to enable him to plead his prior conviction as a bar to prosecution if charged again. "We review denial of a motion to dismiss an indictment *de novo*." United States v. Brewer, 628 F.3d 975, 977 (8th Cir. 2010) (emphasis added). "An indictment is sufficient if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Summers, 137 F.3d 597, 601 (8th Cir. 1998) (internal quotation marks omitted). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." United States v. Hayes, 574 F.3d 460, 472 (8th Cir. 2009) (internal quotation marks omitted).

Huggans contends that the indictment was insufficient as to the conspiracy count because it failed to specify the persons with whom, and the locations and times at which, he conspired to possess and distribute cocaine during the seven-year period between 2000 and 2007. Huggans relies on United States v. Helmel, 769 F.2d 1306 (8th Cir. 1985), in which we recognized that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself as long as the elements of the offense are delineated and the general statement is accompanied by

the specific facts constituting the offense."  Id. at 1322 (citing Hamling v. United States, 418 U.S. 87, 117–18 (1974)) (internal quotation marks omitted).  However, as we have explained in subsequent cases, an indictment provides sufficient "specific facts constituting the offense" if it apprises the defendant of the time frame of the alleged drug conspiracy and the type of drugs involved.  United States v. Peterson, 867 F.2d 1110, 1114 (8th Cir. 1989), *overruled on other grounds by* United States v. Richardson, 439 F.3d 421 (8th Cir. 2006); see also United States v. Olderbak, 961 F.2d 756, 760 (8th Cir. 1992).  Indeed, in Peterson, we found sufficient an indictment containing language nearly identical to that at issue here.[3]  The indictment in this case limited the time frame of the alleged drug conspiracy to the period between the beginning of 2000 and December 20, 2007, and specified that the drug involved was cocaine.  As in Peterson, "[i]n view of these limitations we cannot say that [Huggans] could have failed to realize exactly what conduct the trial concerned."  867 F.2d at 1114.  While the time period specified in the instant indictment is longer than the two-year time frame given in the indictment at issue in Peterson, this difference was driven by the particular facts of each case and does not alter our conclusion.  Indeed, in Helmel, we approved an indictment that charged the defendant with conducting an illegal gambling business "commencing on or about the 1st day of August, 1981, and continuously thereafter."  769 F.2d at 1321 (internal quotation marks omitted).  We rejected the defendant's argument that "the indictment was incurably vague and overly broad in relating the time frame of his actions," holding instead that "[t]he indictment

_____

[3]In Peterson, the indictment states:  "Between about the beginning of 1985, and continuously thereafter and through about May, 1987, in the Northern District of Iowa and elsewhere, [the defendant] wilfully and knowingly did combine, conspire, confederate and agree together with other persons known and unknown to the Grand Jury to . . . wilfully and knowingly distribute and possess with the intent to distribute, cocaine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) . . . ."  867 F.2d at 1114 n.2.

adequately sets forth the approximate dates the offense was committed."[4]  Id. at 1321–22.

As to the attempt count, Huggans asserts that the indictment was defective because it failed to specify the "substantial step" committed in furtherance of the offense, and that this factual omission amounted to the omission of an element of the charged offense.  See United States v. Hance, 501 F.3d 900, 906 (8th Cir. 2007) ("Typically an indictment is not sufficient . . . if an essential element of the offense is omitted from it." (internal quotation marks omitted)).  This argument is without merit. In United States v. Resendiz-Ponce, 549 U.S. 102 (2007), the Supreme Court held that "an indictment alleging attempted illegal reentry under [8 U.S.C.] § 1326(a) need not specifically allege a particular overt act or any other component part of the offense." Id. at 107 (internal quotation marks and alteration omitted).  Although the defendant "[could not] be guilty of attempted reentry . . . unless he committed an overt act qualifying as a substantial step toward completion of his goal," it was not necessary for the indictment to specify "any of three overt acts performed during [the defendant's] attempted reentry: that he walked into an inspection area; that he presented a misleading identification card; or that he lied to the inspector." Id. at 109. Similarly, here, although Huggans could not be guilty of attempt to possess cocaine before taking a substantial step in furtherance of that goal, it was not necessary for the indictment to give the factual details of the overt acts Huggans performed during his attempt to purchase cocaine from Rice.

Huggans is correct that "there are crimes that must be charged with greater specificity." Id.  For example, an indictment alleging failure to answer "questions

---

[4]It is true that in Helmel, unlike in the instant case, a subsequent bill of particulars "further narrowed the period of time relating to [the defendants'] participation" in the conspiracy.  769 F.2d at 1322.  However, "a bill of particulars cannot save an otherwise invalid indictment," and our holding in Helmel was that the indictment was sufficient standing alone.  Id.

which were pertinent to the question then under inquiry" by a congressional subcommittee, in violation of 2 U.S.C. § 192, was insufficient because it did not specify the particular subject under investigation. Russell v. United States, 369 U.S. 749, 753–55 (1962). Such specificity was necessary because the statute did not criminalize refusal to answer non-pertinent questions. Thus, as the Court explained:

> [T]he very core of criminality under 2 U.S.C. § 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject actually was, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.

Id. at 764. By contrast, an indictment charging use of the mails to carry an obscene book, in violation of 18 U.S.C. § 1461, was sufficient even though it used only the statutory language because the word "obscene," as used in the statute, is a legal term of art. Hamling v. United States, 418 U.S. 87, 118–19 (1974). Thus, "[t]he legal definition of obscenity does not change with each indictment; it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him." Id. Similarly, in Resendiz-Ponce, the indictment's use of the statutory language was sufficient because guilt under the statute at issue "[did] not depend . . . crucially upon such a specific identification of fact." 549 U.S. at 110 (internal quotation marks and alteration omitted).

The instant case is more like Resendiz-Ponce and Hamling than Russell. The indictment specified a six-week time frame for the attempt charge and alleged that within that period, Huggans attempted to possess with the intent to distribute cocaine and took a substantial step in furtherance of that goal. This information was sufficient to provide Huggans with "fair notice" of the charges against which he must defend "and to ensure that any conviction would arise out of the theory of guilt presented to

-8-

the grand jury." Resendiz-Ponce, 549 U.S. at 109–10. Therefore, we conclude that the district court did not err in denying Huggans's motion to dismiss the indictment.

B.  Motion for a bill of particulars

Next, Huggans argues that the district court erred in denying his two motions for a bill of particulars. "We review a district court's denial of a motion for a bill of particulars for an abuse of discretion." United States v. Livingstone, 576 F.3d 881, 883 (8th Cir. 2009). "If a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars." Id. (citing Fed. R. Crim. P. 7(f)). "The purpose of a bill of particulars is to inform the defendant of the nature of a charge with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial." Id. (internal quotation marks omitted). "To establish reversible error based on a denial of his motion, [Huggans] must show that he was actually surprised at trial and suffered prejudice from the denial." Id. (internal quotation marks omitted).

Huggans contends that he was prejudiced by the denial of his motion for a bill of particulars because he could not tell from the indictment who were his alleged co-conspirators, when or where the charged conduct occurred, or what were the scope and activities of the alleged conspiracy. Further, he argues that he was unable to anticipate the scope of the case the government would seek to prove on the attempt charge because the indictment referenced a time frame of six-weeks as opposed to a few days, and did not describe the conduct that comprised the "substantial step" he allegedly took in furtherance of the attempt.

"[A] bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." Livingstone, 576 F.3d at 883; see also United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993). As in Livingstone, here, the government's case relied heavily

upon the testimony of Huggans's co-conspirators, and in seeking a bill of particulars, Huggans sought the specifics of what their testimony would be. See Livingstone, 576 F.3d at 883. In its responses to Huggans's pre-trial motions, the government explained its theory of the case and noted that it had already provided Huggans with considerable discovery. Indeed, in its two responses, the government provided virtually every piece of information sought in Huggans's two motions for a bill of particulars. Recognizing this, the magistrate judge recommended that the motion for a bill of particulars be denied as moot, and the district court adopted this recommendation. We discern no abuse of discretion in the district court's decision. The government's disclosures were more than sufficient to enable Huggans to understand the nature of the charges, prepare a defense, and avoid unfair surprise. Id. Moreover, Huggans has failed to describe any instance in which he was actually surprised at trial or any actual prejudice from the denial of his motions. Id. at 884. He does not contend that he missed the chance to pursue a particular defense nor that his chosen defense strategy was hampered. We conclude that the district court did not err in denying Huggans's motions for a bill of particulars.

## C. Motion to sever the counts

Rule 14 of the Federal Rules of Criminal Procedure provides that the district court may order separate trials of counts or grant a severance if it appears that a defendant or the government will be prejudiced by a joinder of offenses. "We will reverse a denial of a motion to sever if the appellant demonstrates an abuse of discretion resulting in clear prejudice." United States v. Al-Esawi, 560 F.3d 888, 891 (8th Cir. 2009). "Only in an unusual case, however, will the prejudice resulting from a joint trial be substantial enough to outweigh the general efficiency of joinder." United States v. Kirk, 528 F.3d 1102, 1107 (8th Cir. 2008) (internal quotation marks omitted). "Even if two counts are improperly joined we will reverse a court's denial of a motion to sever only if the misjoinder results in actual prejudice, i.e., the

misjoinder has a substantial and injurious effect or influence on the verdict." <u>Al-Esawi</u>, 560 F.3d at 891–92.

Huggans argues that the government improperly joined two "marginal cases," using them "to bolster one another into a better chance for conviction." Specifically, Huggans contends that no fact-finder would have believed Stiles's testimony regarding Huggans's participation in the Sais conspiracy absent the evidence that Huggans had negotiated with Rice to purchase twenty kilograms of cocaine and brought nearly $340,000 in cash to a hotel room as payment for that purchase. Similarly, he maintains that he could have persuaded the fact-finder that bringing the money to the hotel room did not constitute a "substantial step" in furtherance of the attempt offense but for Stiles's testimony that Huggans bought hundreds of kilograms of cocaine from him during a recent six-month period.[5]

After reviewing Huggans's arguments and the evidence, we cannot conclude that denial of his severance motion constituted an abuse of discretion resulting in clear prejudice. We have recognized that "[p]rejudice may result from a possibility that the jury might use evidence of one crime to infer guilt on the other or that the jury might cumulate the evidence to find guilt on all crimes when it would not have found guilt if the crimes were considered separately." <u>United States v. Davis</u>, 103 F.3d 660, 676 (8th Cir. 1996). However, "a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime." <u>Id.</u> In <u>United States v. Boyd</u>, 180 F.3d

---

[5]Huggans also asserts that he would not have waived his right to trial by jury had the district granted his motion to sever the counts. To the extent that Huggans is alleging prejudice as a result of his voluntary decision to waive his right to a jury trial, we reject this argument. <u>United States v. Boyd</u>, 180 F.3d 967, 982 (8th Cir. 1999) (rejecting the defendant's argument that he was prejudiced by a joint trial because had the charges been tried separately, "he may have elected to try one or both sets of charges to a jury").

967 (8th Cir. 1999), we affirmed the denial of a motion to sever ten different criminal counts because "[t]here [was] nothing in the record to suggest the trial judge could not keep separate the relevant evidence on each count," and "[f]urther, . . . much, if not all, of the evidence on each would have been admissible in a separate trial on the other counts under Rule 404(b)." Id. at 982–83. Similarly, here, Huggans has not alleged that the district court improperly considered evidence as to one count that was relevant only as to the other, and much, if not all, of the evidence on the conspiracy count would have been admissible in a separate trial on the attempt count under Rule 404(a) or 404(b) and vice versa. Thus, Huggans "simply has not shown that the district court's refusal to sever the counts caused him prejudice." Id. at 983. Accordingly, finding no actual prejudice nor any abuse of discretion, we affirm the district court's denial of Huggans's motion to sever the counts.

## D. Sufficiency of the evidence

Huggans contends that there was insufficient evidence to find him guilty of either charge. "We review the sufficiency of the evidence after a bench trial in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt, even if the evidence rationally supports two conflicting hypotheses." Kain, 589 F.3d at 948 (internal quotation marks omitted). "[W]e will reverse only if the [factfinder] must have had a reasonable doubt concerning one of the essential elements of the crime." United States v. Hoffman, 626 F.3d 993, 995 (8th Cir. 2010).

"To convict [Huggans] of conspiracy to distribute . . . cocaine, the government had to prove that a conspiracy to distribute . . . cocaine existed, that [Huggans] knew of the conspiracy, and that [Huggans] intentionally joined the conspiracy." United States v. Williams, 534 F.3d 980, 985 (8th Cir. 2008). Huggans does not contend that the evidence was insufficient to establish the existence of the Sais conspiracy. At issue, therefore, is whether there was sufficient evidence that he knew of the

-12-

conspiracy and knowingly became a member of the conspiracy. United States v. Prieskorn, 658 F.2d 631, 634 (8th Cir. 1981). "Intentional participation in a criminal conspiracy . . . need not be proved by direct evidence; a common purpose and plan may be inferred from a development and a collocation of circumstances." Id. at 634 (internal quotation marks omitted). "Moreover, to be guilty of a single conspiracy, the conspirators need not know each other or be privy to the details of each enterprise comprising the conspiracy as long as the evidence is sufficient to show that each defendant possessed full knowledge of the conspiracy's general purpose and scope." Id. (internal quotation marks and alteration omitted).

We believe the government adduced more than adequate evidence connecting Huggans to the conspiracy. We reject Huggans's argument that the government's evidence failed to establish anything more than a buyer-seller relationship between Stiles and Huggans. "Because the crime of conspiracy requires a concert of action among two or more persons for a common purpose, the mere agreement of one person to buy what another agrees to sell, standing alone, does not support a conspiracy conviction." Id. (internal quotation marks omitted). "However, . . . buyer-seller relationship cases . . . involve[] only evidence of a single transient sales agreement and small amounts of drugs consistent with personal use." Id. (internal quotation marks omitted). By contrast, in this case, Stiles testified that he sold wholesale quantities of cocaine—totaling in excess of 600 kilograms, according to Stiles's estimate—to Huggans on a regular basis for several months during 2006.[6] The purchase of such a large amount of cocaine raises an inference of knowledge of a drug distribution venture that goes beyond an isolated buyer-seller transaction. Williams, 534 F.3d at 985. Additionally, the fact that Huggans bought large quantities of cocaine from Stiles on numerous occasions suggests more than a mere buyer-seller relationship.

---

[6]To the extent that Huggans questions the reliability of Stiles's testimony, we note that "we do not review questions involving the credibility of witnesses, but leave credibility questions to the [factfinder]." United States v. Gaona-Lopez, 408 F.3d 500, 505 (8th Cir. 2005) (internal quotation marks omitted).

United States v. Donnell, 596 F.3d 913, 925 (8th Cir. 2010) (holding that "the evidence is sufficient to support a conspiracy where the drugs were purchased for resale," and recognizing that "[w]here the evidence shows multiple transactions involving large amounts of drugs, we have held this is sufficient to support a conclusion that the drugs were purchased for resale"); United States v. Hester, 140 F.3d 753, 757 (8th Cir. 1998) (holding that the jury instruction that a buyer-seller relationship does not establish a conspiracy "is not appropriate when there is evidence of multiple drug transactions, as opposed to a single, isolated sale").

As to the attempt count, "[t]o prove attempt, the government must show 1) intent to engage in the crime and 2) conduct constituting a substantial step towards the commission of the crime." United States v. Burks, 135 F.3d 582, 583 (8th Cir. 1998). "A substantial step goes beyond mere preparation but may be less than the last act necessary before commission of the substantive crime." Id. (internal quotation marks omitted). Huggans does not dispute intent, but contends that the government failed to prove that he took a substantial step towards acquiring the twenty kilograms of cocaine from Rice. Huggans maintains that he had engaged only in "mere preparation" at the time of his arrest on April 12, 2007.

Huggans argues that his case is materially indistinguishable from United States v. Joyce, 693 F.2d 838 (8th Cir. 1982), in which we held that the defendant had not yet passed the preparation stage in his attempt to possess cocaine with intent to distribute. In that case,

> Joyce was contacted several times by a government informant who told Joyce that cocaine was available in St. Louis. After the third call, during which a tentative price was discussed, Joyce flew from Oklahoma City to St. Louis to meet with the informant and an undercover police officer, who was posing as a cocaine seller. The parties agreed on a price, but Joyce refused to tender the money until the police officer opened the package which allegedly contained cocaine. The police officer refused

> to open the package, and finally Joyce left without making the purchase. He was arrested and in his possession was the approximate amount of money which he had told the informant he would pay for the cocaine.

United States v. Mims, 812 F.2d 1068, 1077 (8th Cir. 1987) (summarizing the facts of Joyce). This court held that a reasonable jury could not find a substantial step because "the attemptor's act must have passed the preparation stage so that if it is not interrupted extraneously, it will result in a crime," and "Joyce, despite having both the opportunity and ability to purchase the cocaine at the agreed upon price, unambiguously refused." Joyce, 693 F.2d at 841–42 (internal quotation marks and alteration omitted). That is, Joyce voluntarily abandoned "[w]hatever intention [he] had to procure cocaine" before being arrested. Id. at 841. Thus, Joyce "turned on whether it was the defendant himself—rather than a third party—who ended the chain of events leading toward, but not resulting in, the commission of a substantive crime," Burks, 135 F.3d at 584, as have subsequent decisions, see, e.g., United States v. Spencer, 592 F.3d 866, 878 (8th Cir. 2010); Burks, 135 F.3d at 584; United States v. Jonsson, 15 F.3d 759, 762 (8th Cir. 1994); Mims, 812 F.2d at 1078.

Here, "the government, not the defendant, ended the chain of events." Spencer, 592 F.3d at 878. The government's evidence, admitted in the form of witness testimony, telephone recordings, and a videotape of the transaction, demonstrated that Huggans arranged to purchase approximately twenty kilograms of cocaine from Rice, that he met Rice in a hotel room bringing nearly $330,000 in cash, that he actually handed over the money to Rice, and that he accompanied Rice out of the hotel room with the intention of obtaining the cocaine from one of Rice's associates. Huggans's conduct during his preliminary conversations with Rice, at the hotel room meeting, and continuing right up until the moment when he was arrested, "strongly corroborated his unwavering purpose to purchase [cocaine]." Jonsson, 15 F.3d at 762; cf. Joyce, 693 F.2d at 843 n.5 (noting that "if Joyce had given [the undercover officer] the money necessary to purchase the cocaine but [the undercover officer] refused to give Joyce the cocaine, Joyce would have committed an attempt to possess cocaine

-15-

with the intent to distribute"). At no point did Huggans voluntarily abandon his intention to procure cocaine. We hold that given this evidence, a reasonable factfinder could find that Huggans intended to possess cocaine with intent to distribute in violation of the statute and that he took a substantial step toward the commission of that crime. Accordingly, we affirm Huggans's convictions on both counts.

E. Equitable tolling of the limitations period for challenging convictions alleged in a criminal information pursuant to 21 U.S.C. § 851

Huggans also challenges his sentence, arguing that the district court erred in refusing to equitably toll the five-year limitations period for challenging prior convictions, as provided by 21 U.S.C. § 851(e). "We review the decision to deny equitable tolling de novo." United States v. Hernandez, 436 F.3d 851, 858 (8th Cir. 2006). Prior to trial, the government filed an information seeking a sentence of life imprisonment pursuant to § 841(b)(1)(A)(ii)(II). See 21 U.S.C. § 841(b)(1)(A)(ii)(II) (mandating a sentence of life imprisonment for a violation of § 841(a) involving five kilograms or more of cocaine if the defendant has two or more prior convictions for a felony drug offense); id. at § 851(a)(1) ("No person [convicted under § 841(a)] . . . shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, . . . the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon."). The information alleged two prior felony drug convictions, which occurred in 1990 and 1995. The district court did not permit Huggans to attack the validity of these two prior convictions because § 851(e) precludes a defendant from challenging the validity of a prior conviction used to enhance a sentence if the conviction is over five years old. Huggans argues that the district court erred in finding that equitable tolling does not apply to the five-year limitations period provided by § 851(e). Alternatively, he contends that if § 851(e) is not subject to equitable tolling, then the sentence enhancement provisions of § 851 violate due process, "at least when applied to a

defendant with a reasonable basis for challenging a conviction that is more than five years old."

Huggans's argument is foreclosed by this court's decision in United States v. Prior, 107 F.3d 654 (8th Cir. 1997), in which we held that "except for the limited circumstance where a prior conviction was obtained in violation of the right to have counsel appointed, a defendant has no constitutional right to challenge a prior conviction used to enhance a current sentence, and accordingly, section 851(e) does not violate due process."[7]  Id. at 660–61; see also United States v. Carter, 270 F.3d 731, 736 (8th Cir. 2001).  As we explained in Prior, § 851(e) "is wholly reasonable, both to effectuate the legitimate purposes of enhanced sentencing for recidivists, and to eliminate a host of practical problems with respect to ancient records absent such a provision."  107 F.3d at 661.  Accordingly, the district court did not err in finding that Huggans could not challenge his prior convictions.

## F.  Motion for a new trial

Huggans next contends that the district court erred when it denied his motion for a new trial based upon newly discovered evidence.  "We review the denial of a motion for new trial based on newly discovered evidence for clear abuse of discretion."  United States v. Winters, 600 F.3d 963, 970 (8th Cir. 2010).  It is unclear precisely what use Huggans would have sought to make of the information now presented as "newly discovered."  Specifically, this evidence consists of the offense conduct listed in the Pre-Sentence Investigation Reports ("PSR") of Sais conspirators Sammy Jefferson and Eric Earnest.  These PSRs held Jefferson and Earnest responsible for no more than fifty kilograms of cocaine each.  Additionally, Huggans proffers affidavits provided by Jefferson and Earnest in which they attest that they

---

[7]Huggans does not claim that his prior convictions were secured without the benefit of counsel.

were unaware that Huggans was a member of the Sais conspiracy. Huggans appears to be arguing that he would have used this information to impeach Stiles's testimony regarding Huggans's participation in the Sais conspiracy and regarding the quantity of drugs that Stiles sold to Huggans.

To warrant a new trial on this ground, Huggans must prove that:

(1) the evidence [was] discovered after trial; (2) the failure to discover this evidence [was] not . . . attributable to a lack of due diligence on [Huggans's] part . . . ; (3) the evidence [is] not . . . merely cumulative or impeaching; (4) the evidence [is] material; and (5) the evidence [is] likely to produce an acquittal if a new trial is granted.

United States v. Duke, 255 F.3d 656, 659 (8th Cir. 2001). Huggans fails to satisfy this rigorous standard. See United States v. Baker, 479 F.3d 574 (8th Cir. 2007) ("The standard for a new trial on this basis is 'rigorous' because these motions are 'disfavored.'" (quoting United States v. Dogskin, 265 F.3d 682, 685 (8th Cir. 2001))).

To the extent that Huggans would have used the information contained in Jefferson's and Earnest's PSRs and affidavits to refute Stiles's testimony, such evidence, even if "newly discovered," would not warrant a new trial. United States v. Johnson, 450 F.3d 366, 372 (8th Cir. 2006) (recognizing that newly discovered evidence will not warrant a new trial if it is "merely cumulative or impeaching"); see also United States v. Estabrook, 774 F.2d 284, 290 (8th Cir. 1985) ("Newly discovered evidence which serves only to refute testimony of a government witness is impeaching . . . ."). Additionally, the information in the PSRs regarding the quantity of drugs for which Jefferson and Earnest were responsible is "merely cumulative" of Stiles's plea agreement and PSR. At trial, counsel for Huggans vigorously cross-examined Stiles on the disparity between the amount of cocaine he pled to (15-50 kilograms) and his testimony that he sold Huggans in excess of 600 kilograms of cocaine. Further, Huggans has not shown that his failure to obtain

-18-

affidavits from Jefferson and Earnest prior to trial, or to call them as witnesses at trial, was due to any cause other than lack of diligence on his part. In any event, the information provided in the affidavits is not material to Huggans's guilt. See Prieskorn, 658 F.2d at 634 ("[T]he conspirators need not know each other or be privy to the details of each enterprise comprising the conspiracy as long as the evidence is sufficient to show that each defendant possessed full knowledge of the conspiracy's general purpose and scope." (internal quotation marks omitted)). Moreover, upon review of the record, we agree with the district court's determination that the evidence against Huggans was "overwhelming," and that the information now presented as newly discovered would not have produced an acquittal upon retrial. Accordingly, we conclude that the district court did not abuse its discretion in denying Huggans's motion for new trial.

### G. Failure to review the pre-sentence investigation reports of two of the government's witnesses

Lastly, Huggans argues that the district court erred in failing to conduct *in camera* review of the PSRs of cooperating government witnesses Curtis Rice and Debra Rice to determine whether they contained exculpatory evidence or impeachment material within the meaning of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972).[8] "We review a district court's

---

[8]Under Brady, "the government must disclose any evidence both 'favorable to an accused' and 'material either to guilt or to punishment,'" United States v. Whitehill, 532 F.3d 746, 753 (8th Cir. 2008) (quoting Brady, 373 U.S. at 87), and under Giglio, "the government must disclose matters that affect the credibility of prosecution witnesses." United States v. Morton, 412 F.3d 901, 906 (8th Cir. 2005). "[F]or example, a defendant is entitled to know of a promise to drop charges against a key witness if that witness testifies for the government." Id. However, "[u]ndisclosed Brady/Giglio information is deemed material so as to justify a retrial only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different." United States v. Garcia, 562 F.3d 947, 953

decision to provide or deny a criminal defendant access to another person's PSR for an abuse of discretion." United States v. Jewell, 614 F.3d 911, 921 (8th Cir. 2010). We have held that the district court abuses its discretion in failing to carry out such a review "where . . . the defendant has sought access to a coconspirator's PSR, the government has recognized the possibility that the PSR contains Brady/Giglio information and requested *in camera* review, and the district court fails to carry out such review." United States v. Garcia, 562 F.3d 947, 953 (8th Cir. 2009).

Here, however, neither Huggans nor the government invited the district court to conduct *in camera* review of Curtis Rice's and Debra Rice's PSRs. Although Huggans requested production of the PSRs pertaining to the government's cooperating witnesses prior to trial, he never moved the district court to require the government to disclose the PSRs. Cf. Jewell, 614 F.3d at 921 (noting that, in that case, the defendant "brought a motion [in district court] to require the government to disclose [a cooperating witness's] PSR, or in the alternative, asking the district court to conduct an *in camera* review of the PSR to determine whether it contained material which should be disclosed"). On appeal, Huggans contends that during a pre-trial conference on January 15, 2009, the government invited the district court to review the PSRs *in camera* to determine whether they contained Brady/Giglio information. But Huggans is mistaken. During that pre-trial conference, as part of a discussion related to discovery issues, counsel for the government informed the district court that the government had refused Huggans's informal request for the PSRs relating to the government's witnesses because the government was "not at liberty to turn those over." Counsel for Huggans stated, "I accepted that." Counsel for the government then clarified that "if a judge tells me to do that, that's okay." However, Huggans did not pursue the matter. Neither party suggested the possibility that the PSRs at issue could contain Brady/Giglio information and neither party asked the district court to

_____

(8th Cir. 2009) (internal quotation marks and alterations omitted).

review any PSRs *in camera*. The record contains no other references to the production of PSRs pertaining to the government's cooperating witnesses. We conclude, therefore, that Huggans waived this issue. Consequently, we perceive no error in the district court's failure to review *in camera* PSRs of Curtis Rice and Debra Rice. <u>See</u> <u>United States v. Rees</u>, 447 F.3d 1128, 1130 (8th Cir. 2006) ("An argument not raised below cannot be raised on appeal for the first time unless the obvious result would be a plain miscarriage of justice." (internal quotation marks omitted)).

## III. Conclusion

Accordingly, we affirm the decision of the district court.

_____